IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Douglas Rattin** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **Civil Action No.** |
| v. | ) |
| | ) |
| **Wayfair, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

_____

# COMPLAINT

**COMES NOW** Plaintiff, Douglas Rattin ("Plaintiff"), by and through the undersigned counsel, and files this, his Complaint against Defendant Wayfair, LLC ("Defendant"), and states as follows:

## I. INTRODUCTION

1.

This is an action brought by Plaintiff Douglas Rattin under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, et seq, for unlawful termination of Plaintiff from his employment with Defendant in violation of the above-named act.

2.

Defendant is directly and indirectly responsible for the illegal and unlawful conduct of its employees, including harassment and discrimination against Plaintiff based on his disability, leading to Plaintiff's unlawful discharge from employment.

3.

Defendant's actions, or lack thereof, subjected Plaintiff to harassment and discrimination, which ultimately led to Plaintiff's unlawful termination of employment.

## II. JURISDICTION AND VENUE

4.

This action is brought pursuant to Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, and its implementing regulation at 29 C.F.R. § 1630.4.

5.

On or about September 29, 2025, the Equal Opportunity Employment Commission issued a Right to Sue Letter to Plaintiff. Plaintiff has exhausted all his administrative remedies.

6.

Plaintiff is a resident of Georgia, and at all times relevant to the allegations in this Complaint, was a resident of Georgia and a citizen of the United States of America.

7.

Defendant is a foreign limited liability company with a principal office address of 4 Copley Place, 7th Floor, Boston, Massachusetts 02116, and incorporated in the State of Delaware.

8.

Defendant transacts business in the State of Georgia, including employing individuals and operating facilities in the State of Georgia at 130 Distribution Drive, McDonough, Georgia, 30252, in Henry County.

9.

At the time of Plaintiff's unlawful termination, Plaintiff was employed at Defendant's distribution center located at 130 Distribution Drive, McDonough, Georgia, 30252, in Henry County.

10.

The Court has original subject matter jurisdiction over this matter predicated on federal question jurisdiction, as the instant case deals with violations of federal statutes. 28 U.S.C. § 1331.

11.

The Court has personal jurisdiction over the parties hereto pursuant to FRPC Rule 4(k)(1)(A) and O.C.G.A. § 9-10-91(A).

12.

A substantial part of the events or omissions giving rise to the claim in this case occurred within the Northern District of Georgia, Atlanta Division, and venue is appropriate in this forum pursuant to 28 U.S.C. § 1391(b)(2).

### III.   PARTIES

13.

At all times herein mentioned, Defendant was an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

14.

From November 6, 2017, to March 17, 2025, Defendant employed Plaintiff as a Facilities Manager at Defendant's McDonough distribution center.

15.

Sometime after November 6, 2017, the job title of Facilities Manager was renamed to Maintenance Manager.

16.

At all times herein mentioned, Plaintiff was an employee of Defendant within the meaning of the ADA. 42 U.S.C.A. § 12111(4).

17.

Plaintiff has a severe hearing impairment that requires the use of a hearing aid.

18.

At all times relevant to this action, Plaintiff was a person with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), based on his hearing impairment.

19.

At all times relevant to this action, Defendant was responsible for managing, overseeing, employing, and supervising persons associated with and employed by Defendant.

## IV.   FACTUAL ALLEGATIONS

20.

On or about November 6, 2017, Plaintiff began employment as a Maintenance Manager at Defendant's McDonough-based distribution center.

21.

Plaintiff suffers from a hearing impairment that requires hearing aids.

22.

Plaintiff is a member of one or more of a protected class based on his disability.

23.

At all times of Plaintiff's employment, Defendant knew of Plaintiff's hearing impairment.

24.

In 2023, Defendant's employee Gideon Asabre was promoted to Site Director at Defendant's McDonough-based distribution center.

25.

On multiple occasions, Mr. Asabre belittled Plaintiff for his disability in the presence of co-workers during meetings by telling Plaintiff to turn his hearing aid up and during warehouse floor walks.

26.

Mr. Asabre's actions that belittled Plaintiff on the basis of his disability caused Plaintiff embarrassment, emotional distress, and created a hostile work environment.

27.

On or about early February 2025, Plaintiff received a positive review, and Defendant informed him that he was meeting all of the high standards set by the Defendant.

28.

Plaintiff's responsibilities as a Maintenance Manager included, among other duties, managing a team of maintenance and facilities associates that reported to Plaintiff.

29.

On or about February 25, 2025, Defendant's employee, Devon Bell, who was a maintenance worker in the Defendant's McDonough-based distribution facility, lost his badge.

30.

Mr. Bell asked Plaintiff for assistance in finding his lost badge four (4) hours into his shift.

31.

When Plaintiff asked Mr. Bell why it had taken him four (4) hours to ask for assistance, Mr. Bell responded angrily and refused to answer.

32.

When Plaintiff asked Mr. Bell what he had been doing during the time he was unable to work due to his badge not working, Mr. Bell became angry and refused to answer the question, stating, "I don't have to tell you."

33.

Plaintiff asked Mr. Bell again what Mr. Bell had been doing and Mr. Bell responded "I don't have to tell you. Slavery ended 100 years ago. You don't have to tell me what to do."

34.

Mr. Bell proceeded to yell angrily at Plaintiff, but Plaintiff could not understand what Mr. Bell was saying due to his hearing impairment.

35.

The exchange between Plaintiff and Mr. Bell occurred in the warehouse, which is a noisy environment.

36.

Because Plaintiff could not understand what Mr. Bell was angrily yelling and because the warehouse was a noisy environment, Plaintiff stepped closer to Mr. Bell to understand what Mr. Bell was saying.

37.

Mr. Bell proceeded to walk away once Plaintiff stepped closer.

38.

Plaintiff believes Mr. Bell was recording the exchange between Plaintiff and Mr. Bell because Mr. Bell was sticking out his chest and appeared to have a phone in his pocket.

39.

Later that same day, Plaintiff asked Mr. Bell why certain equipment had not been put on the chargers; Mr. Bell responded that his badge was still not working.

40.

Plaintiff asked Mr. Bell why he did not tell him sooner that his badge was still not working.

41.

Mr. Bell responded that Plaintiff "did not need to know."

42.

Plaintiff immediately contacted Mr. Asabre and completed an incident report form.

43.

Over the next two weeks, Plaintiff had several meetings with Mr. Asabre and Jada Mears, an HR associate, to discuss the incident.

44.

In one meeting between Plaintiff and Ms. Mears, she attempted to dismiss the incident with Mr. Bell and resolve it without investigation.

45.

In this meeting, Plaintiff questioned Ms. Mears regarding what evidence or recordings regarding the incident were collected and stated that if she did not follow the proper procedures for investigating the incident, he would report the incident to Defendant's management in Boston and the Equal Employment Opportunity Commission, whereupon Ms. Mears asked Plaintiff to leave her office.

46.

Ms. Mears became angry and asked Plaintiff to leave her office.

47.

On or about March 17, 2025, Plaintiff met with Mr. Asabre and Ms. Mears again, wherein they stated that they watched a recording of the incident and accused Plaintiff of moving toward Mr. Bell to fight him.

48.

Mr. Asabre and Ms. Mears stated that they were going to write up Plaintiff and terminate him.

49.

Defendant's policy ordinarily dictated that write-ups would last 90 days and would be removed if no issues came up during the period.

50.

Mr. Asabre and Ms. Mears deviated from Defendant's policy and terminated Plaintiff on March 17, 2025.

51.

Defendant claimed that Plaintiff was terminated because of his failure to improve his management of his team and violations of Defendant's Code of Conduct.

52.

At the time of the incident, Plaintiff was well qualified for his position as evidenced in his February 2025 performance review.

53.

Mr. Asabre consistently ridiculed Plaintiff for his hearing impairment in front of other employees and therefore knew that Plaintiff had a hearing impairment.

54.

Mr. Asabre should have known, when he watched the recording of Plaintiff and Mr. Bell, that Plaintiff was getting closer to Mr. Bell so that he could hear.

55.

Plaintiff was subjected to adverse employment action when Defendant terminated him on March 17, 2025.

56.

Defendant discriminated against Plaintiff based on his disability and ultimately terminated his employment due to his status as a person with a disability, a protected class of individuals.

## V. <u>COUNT I: DISCRIMINATION UNDER THE ADA</u>

57.

Plaintiff realleges paragraphs 1 through 54 as if fully set forth herein and further alleges:

58.

Plaintiff was an employee of Defendant who had a disability protected under the ADA.

59.

Plaintiff was qualified for the position held in Defendant's company.

60.

Plaintiff was unlawfully terminated based on his disability under 42 U.S.C. § 12112.

61.

Plaintiff is entitled to seek damages against Defendant equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to him by reason of Defendant's violation of the ADA, 42 U.S.C. § 12112.

62.

Plaintiff is entitled to reinstatement of his employment and benefits as a Facilities Manager for Defendant because of Defendant's unlawful action in terminating Plaintiff in violation of the ADA, 42 U.S.C. § 12112.

63.

The Court may award Plaintiff with reasonable attorney's fees and costs of this action pursuant to 42 U.S.C. § 12205. Plaintiff is entitled to reasonable attorney's fees and costs of this action, and makes a claim for the same.

## VI.   COUNT II: RETALIATION UNDER THE ADA

64.

Plaintiff realleges paragraphs 1 through 63 as if fully set forth herein and further alleges:

65.

Plaintiff engaged in statutorily protected activity by making a complaint to the appropriate corporate individuals and expressing his right to make the same complaint to the Equal Employment Opportunity Commission.

66.

Defendant took an adverse action against Plaintiff by terminating Plaintiff.

67.

Defendant terminated Plaintiff because of his disability.

68.

Defendant's actions complained of herein have caused damage to Plaintiff, including but not limited to lost wages, lost benefits, and other damages.

## VII. COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.

Plaintiff realleges paragraphs 1 through 68 as if fully set forth herein and further alleges:

70.

Defendant knew Plaintiff had a disability in the form of a hearing impairment.

71.

Defendant knew that belittling Plaintiff because of his hearing impairment would cause emotional distress.

72.

Mr. Asabre, Defendant's employee and agent, intended to embarrass and cause emotional distress to Plaintiff each time he mocked Plaintiff's hearing impairment in front of co-workers.

73.

Mr. Asabre intentionally and knowingly belittling Plaintiff for his hearing impairment in front of co-workers did in fact cause Plaintiff emotional distress.

74.

Defendant's conduct in terminating Plaintiff was intentional.

75.

Defendant's conduct in terminating Plaintiff based upon his disability was extreme and outrageous.

76.

Defendant's termination of Plaintiff's employment caused Plaintiff severe emotional distress.

## VIII. **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff Douglas Rattin respectfully prays that this Court:

a) Find that the Defendant unlawfully and illegally terminated Plaintiff from his employment in violation of Title I of the Americans with Disabilities Act, 48 U.S.C. §§ 12111, et seq.;

b) Find that the Defendant unlawfully and illegally discriminated against Plaintiff in violation of Title I of the Americans with Disabilities Act, 48 U.S.C. §§ 12111, et seq.;

c) Award Plaintiff back pay and benefits;

d) Award Plaintiff compensatory damages;

e) Award Plaintiff reinstatement of employment, including restoration of all his employment benefits;

f) Award Plaintiff reasonable attorney's fees and costs of this action;

g) Grant Plaintiff a trial by jury on this matter; and

h) Award Plaintiff such other and further relief as this Court deems just and appropriate

This 5th day of December, 2025.

            Respectfully submitted,

            */s/ Megan Murren Rittle*
            Megan Murren Rittle
            Georgia Bar No. 384595
            Catherine A. Hare
            Georgia Bar No. 455107

SMITH, WELCH, WEBB & WHITE, LLC
2200 Keys Ferry Court
McDonough, GA 30253
(678)-583- 4835 phone
(770) 957-9165 fax
mmrittle@smithwelchlaw.com
chare@smithwelchlaw.com

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **Douglas Rattin** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No.** |
| **v.** | ) |
| | ) |
| **Wayfair, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Plaintiff's counsel hereby certifies that this pleading has been prepared with one of the font and point selections approved by the Court in L.R. 5.1.

This 5th day of December, 2025.

                                                  Respectfully submitted,

                                                  */s/ Megan Murren Rittle*
                                                  Megan Murren Rittle
                                                  Georgia Bar No. 384595
                                                  Catherine A. Hare
                                                  Georgia Bar No. 455107

SMITH, WELCH, WEBB & WHITE, LLC
2200 Keys Ferry Court
McDonough, GA 30253
(678)-583- 4835 phone
(770) 957-9165 fax
mmrittle@smithwelchlaw.com
chare@smithwelchlaw.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **Douglas Rattin** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No.** |
| v. | ) |
| | ) |
| **Wayfair, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

_____

### CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed PLAINTIFF'S COMPLAINT with the Clerk of Court using the CM/ECF system and served via U.S. First-Class mail to the following:

Wayfair, LLC
4 Copley Place, 7th Floor
Boston, Massachusetts 02116

This 5th day of December, 2025.

                                          Respectfully submitted,

                                          */s/ Megan Murren Rittle*
                                          Megan Murren Rittle
                                          Georgia Bar No. 384595
                                          Catherine A. Hare
                                          Georgia Bar No. 455107

SMITH, WELCH, WEBB & WHITE, LLC
2200 Keys Ferry Court

McDonough, GA 30253
(678)-583- 4835 phone
(770) 957-9165 fax
mmrittle@smithwelchlaw.com
chare@smithwelchlaw.com